# SUPREME COURT.

HENRIETTA B. POWER, individually and as executrix, agt. HUGH CASSIDY, surviving executor, &c., &c., and others.

*Will — construction — bequests to charities — annuity — Equitable conversion.*

Where a testator disposed of the residue of his estate in these words: "The balance I give to my executors, to be divided by them among such Roman Catholic charities, institutions, schools or churches, in the city of New York, as a majority of my executrix and executors shall decide, and in such proportions as they may think proper.

*Held*, that the testamentary disposition was not invalid on account of vagueness or indefiniteness.

*Also*, that when a will affords a rule of ready application for selecting the object of the testator's bounty, and when the gifts are capable of being executed by a judicial decree, there is no reason why a court should not enforce them.

A majority of the "executrix and executors" having designated charitable societies, from the class mentioned by the testator:

*Held*, they are entitled to the gifts.

*Also*, that the refusal of one of the trustees to act with the others in making a selection of societies to take the testator's gifts, would not invalidate the decision and selection made by the majority.

Where a direct authority to sell the testator's real estate was given to the executors, and the entire will showed that the testator's intention was that the real estate should be converted into money for the purpose of consummating his gifts:

*Held*, that there is an equitable conversion.

*Special Term, June*, 1877.

*James W. Gerard*, for plaintiff.

*B. F. Dunning*, for defendant Peter Rice.

*Jno. E. Develin*, for charitable societies.

VAN VORST, *J.* — By the first clause of his last will and testament, John H. Power, the testator, after giving and devising one-third of the rest, residue and remainder of his estate to his wife, and one-third to his nephew, Peter Rice, disposed of the remainder in these words:

"The balance I give to my executors, to be divided by them among such Roman Catholic charities, institutions, schools or churches, in the city of New York, as a majority of my executrix and executors shall decide, and in such proportions as they may think proper."

The evidence shows that there were, at the death of the testator, regularly organized and incorporated Roman Catholic charities, institutions, schools and churches, located in the city of New York, competent to take the testator's gift, and that after the death of the testator, Lewis J. White and Hugh Cassidy, the executors, &c., of the testator, being a majority of the " executrix and executors " named in the will, decided, and in writing designated, what Roman Catholic institutions of charity, asylums and hospitals, should take the one-third part of the testator's estate, above designated, and the proportions for each. All of which institutions are organized as corporations.

It is objected on the part of the plaintiff, the executrix and widow of the deceased, that the above clause of the will is invalid and inoperative in law, and she claims that the portion of the estate therein attempted to be given, is undisposed of.

The learned counsel for the plaintiff, in support of his view, that the provision is void, cites from Story's Equity Jurisprudence (*secs.* 964, 979) as follows: " Courts of equity carry trusts into effect only when they are of a certain and definite character. If, therefore, a trust be created in a party, but the terms by which it was created are so vague and indefinite that courts of equity cannot clearly ascertain either its objects or the persons who are to take, then the trust will be held entirely to fail, and the property will fall into the general

fund of the author of the trust." There can be no question of the correctness of this principle governing courts of equity. It has been repeatedly acted upon and applied in the courts ·of this state (*Owens* agt. *The Missionary Society*, 14 *N. Y.*, 380; *Downing* agt. *Marshall*, 23 *id.*, 382; *Sherwood* agt. *Amer. Bible Society*, 1 *Keyes*, 561; *Holmes* agt. *Mead*, 52 *N. Y.*, 332). After careful consideration I see nothing really vague or uncertain in the disposition made by the testator.

There is no uncertainty with respect to the trustees, for they are named, and have power to act. Nor, in a true sense, is there uncertainty as to the particular object of the testator's bounty.

He was a Roman Catholic, and his desire was, that the schools and institutions of charity connected with his church should share in a definite portion of his estate.

It is evident that the object which the testator would favor was the religious teaching and work of charity in which his church was engaged, and that not in an universal sense, but with limitation as to locality.

The church, the school, the institution in the city of New York, were the particular agencies through which the testator would accomplish his religious and benevolent purposes.

There is nothing vague, indefinite or uncertain with regard to the agencies as a class.

They are distinct, and can readily be separated from the large number of religious and charitable organizations of New York, maintained by other Christian and benevolent bodies. They, in fact, constitute a limited and well defined class, have each a distinct organization, and are bodies corporate.

The duty of designating the particular institutions from the general class, is devolved upon the executrix and executors, who are also to determine the amount each shall receive. And when that has been done, the action would have the same effect as though the names of the particular institutions and charities were written in the will, and a court of equity would have no difficulty in enforcing the trust by its judgment.

In *Holmes* agt. *Mead* (*supra*) the income of a sum of money was directed to be paid in and for the support of the rector, &c., for the time being, of St. Mary's church, Beechwood, for the support of a clergyman employed as a missionary or otherwise to officiate, and who shall officiate therein.

ALLEN, J., says: The beneficiary under the trust is the minister officiating at the church named for the time being. Although the particular individual is not named, he is so described that he is capable of being identified and distinguished from every other human being. There is nothing uncertain or indefinite in the description. A *cestui que trust* need not necessarily be described by name, and any other designation or description by which he may be identified will do as well (*Wilkinson* agt. *Lingden, L. R.,* 5 *Chy. Appeals,* 570).

Within the limits prescribed by the testator, I cannot think that the trustees would have any difficulty in designating the particular objects to participate in the testator's bounty under the will. They do not seem to have had any, and have, by their designation, named them. It is not left to the court to select the donees, and the only duty left it is to give effect to the testamentary disposition by its judgment.

" When a gift is capable of being executed by a judicial decree, there is no reason why a court should not execute it " (*Williams* agt. *Williams,* 4 *Seld.,* 548).

In the case last cited, the gift was for a permanent fund for the education of the poor who should be educated in the academy in the village of Huntington, or in case of the destruction of the academy by fire or otherwise, then in the school next west of the academy.

It was held that " a rule of ready application is given for selecting the object of the testator's bounty."

Although the authority of *Williams* agt. *Williams,* in so far as it favors the existence of the law of charitable uses in this state, has been overruled by later cases in the Court of Appeals, still the conclusion as to the validity of the gift

under consideration in that case and above referred to, has not been disturbed.

In *Owens* agt. *The Missionary Society* (14 *N. Y.*, 408) it it said: "To avoid misapprehension it may be proper to add that nothing which has been said is intended to deny the power of courts of equity, in this state, to enforce the execution of trusts created for public and charitable purposes, in cases where the fund is given to a trustee competent to take, and when the charitable use is so far defined as to be capable of being specifically executed by the authority of the court, even although no certain beneficiary, other than the public at large, may be designated." There could be no reasonable doubt that if instead of devolving upon his executors the duty of selecting from a limited class of charitable societies, those to share in his bounty, the testator had himself made the selection and written the names of the beneficiaries in the will, the gift would have been legal.

It appears to me it is no less so from the fact, that he has entrusted an office which he could have himself performed, that is the making of a selection, to the decision of the trustees appointed by him, he designating the special class from which the selection was to be made.

Such decision, when made, exhausts the power of the trustees on that subject, and having been made, and the beneficiaries designated, being parties to this action, together with all others interested in the estate, there is not the least difficulty, on the part of the court, in making a just, complete and protective judgment, by which the whole estate may be justly, and according to the will of the testator, finally distributed.

I do not think the benevolent intentions of the testator should be defeated through the interposition of imaginary or apprehended obstacles, when the case is presented in a form in which all just ground of difficulty or uncertainty is removed, and in a manner which the testator contemplated and expressly directed. Nor is the fact, if it be so, that some

Power agt. Cassidy.

of the Roman Catholic institutions in the city of New York were, at the death of the testator, unincorporated, any objection to the validity of the gifts in question. It is enough that there were schools and institutions answering the description of those named in the will, incorporated and competent to take.

We are not to presume that the testator intended to make an illegal disposition or select objects incapable of receiving his gifts. The presumption is that he meant that his trustees should designate competent beneficiaries, and this they appear to have done.

The designation by the two executors, a majority of the " executrix and executors," was sufficient. One of the executors, Mr. White, was ill. The executrix was invited to be present at the designation and selection. This she declined.

By a refusal or omission to act with them, after notice, she could not defeat the will. And in view of the illness of Mr. White, the majority were justified in making the selection. Mr. White died during the month in which the selection was made.

I construe the letter of the executrix to be a refusal to join with her associates in the trust in making the selection at the time.

In respect to the other matters, I am of opinion that the widow is entitled not only to the annuity of $8,000 per annum during her natural life, but also to one-third of the residue of the estate, including the fund or property out of which the annuity is raised. But the principal of that fund cannot be impaired or disposed of by her to take effect during her life. The fund must remain intact so long as she shall live, to produce the annuity.

Upon a careful consideration of the whole will, I must conclude that the testator contemplated a conversion of the realty into personalty.

The purposes of his will cannot well and effectively be carried out without such conversion. A division was con-

templated to carry into effect his gifts to charitable objects and other legatees, and that can only be well done through a conversion.

A direct authority to sell is given. But that of itself would not be sufficient to work a conversion. It is only when the whole will is considered, and the disposition made of the estate and the payment to be made therewith, and the division made thereof is brought into view, that such result is reached (*Dodge* agt. *Pond*, 23 *N. Y.*, 69).

The testator was a lawyer, and as such was conversant with the import of legal terms; he drew his own will.

The third part of his estate designed for charities, is disposed of by the simple words "I give." When speaking of the other residuary legatees he uses the words "I give and devise."

When making provision for the charitable institutions the language used would seem to indicate that as to them at least he meant gifts of money.

These gifts cannot be well and conveniently consummated without a sale of the realty.

That the terms of the will accomplish a conversion of the realty into personalty, is conceded by the learned counsel of the plaintiff in his argument. And this would seem to obviate any objection arising under the Revised Statutes that the trust, so far as the real estate is concerned, was not recognized by its provisions.

The only trust in the executors, in respect to this portion of the estate, is to sell the same and to divide the proceeds among the beneficiaries, to whom the same is in effect given, so that there can be no valid objection.

The above conclusions cover all the grounds submitted for judicial determination, and judgment is ordered accordingly.

Findings of fact and conclusions of law must be prepared by the plaintiff's attorneys, and will be settled on a notice of five days to the other party.